UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTAK NAZARYAN,<br><br>                          Petitioner,<br><br>v.<br><br>CHRISTOPHER LAROSE, Waren of Otay Mesa Detention Center, et al.,<br><br>                          Respondents. | Case No.: 25-CV-3628 JLS (MMP)<br><br>**ORDER GRANTING IN PART WRIT OF HABEAS CORPUS**<br><br>(ECF No. 1) |

Presently before the Court is Petitioner Artak Nazaryan's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Pet.," ECF No. 1). Also before the Court is Respondents Christopher LaRose's (Senior Warden of Otay Mesa Detention Center), Daniel A. Brightman's (San Diego Field Office Director, ICE/ERO), Todd Lyons's (Acting Director of Immigration Customs Enforcement), Kristi Noem's (Secretary of the U.S. Department of Homeland Security), and Pamela Bondi's (Attorney General of the United States) Return in Opposition to the Habeas Petition ("Ret.," ECF No. 4), and Petitioner's Traverse ("Traverse," ECF No. 5). *See generally* Docket. For the reasons set forth below, the Court **GRANTS** in part Petitioner's Petition for Writ of Habeas Corpus (ECF No. 1).

/ / /

## BACKGROUND

Petitioner, an Armenian national from Georgia, entered the United States on October 29, 2015, where he presented his case in a credible fear interview. Pet. at 2. On December 31, 2015, Petitioner was found to have a credible fear of returning to Georgia, granted parole, and released. *Id.* Petitioner then lived in the United States for the next ten years without issue. *Id.* He received work authorization, found a place to live, "integrated himself into the local community", filed an I-589 application for asylum, and got engaged. *Id.* On November 29, 2025, Petitioner was driving from Los Angeles to San Diego with his fiancé when they followed their phone's GPS to a Jersey Mike's Subs. *Id.* at 2–3. They were unaware that the restaurant was located on Camp Pendleton. *Id.* at 3. When Petitioner approached the gate, they were stopped by guards who refused to let them turn around and leave. *Id.* Instead, the guard took Petitioner's driver's license, asked about his immigration status, took his photo and fingerprints, and detained him. *Id.* A few hours later, ICE officers arrived and arrested Petitioner. *Id.* Petitioner was not informed why he was detained or what change in circumstances justified his re-detention. *Id.* at 4.

Respondents acknowledge that Petitioner was released on a valid parole at the time he was detained but only admits that Petitioner is entitled to a bond hearing under *Maldonado Bautista v. Santacruz*, No. 25-CV-1873-SSS-BFM, --- F. Supp. 3d ---, 2025 WL 3289861 (C.D. Cal. Nov. 20, 2025),[1] and is not entitled to release. Ret at 2. Petitioner argues that he is entitled to release because the government violated his due process rights by revoking his parole without notice or an opportunity to be heard. Traverse at 4.

## LEGAL STANDARD

A federal prisoner challenging the execution of his or her sentence, rather than the legality of the sentence itself, may file a petition for writ of habeas corpus in the district of

---

[1] On December 18, 2025, the *Bautista* court entered final judgment finding that July 8, 2025, DHS Notice redefining who is considered an "applicant for admission" under 8 U.S.C. § 1225(b)(2)(A), is unlawful under the Administrative Procedure Act. *Maldonado Bautista*, No. 25-CV-1873-SSS-BFM, ECF No. 94.

1 his confinement pursuant to 28 U.S.C. § 2241.  *See* 28 U.S.C. § 2241(a).  The sole judicial body able to review challenges to final orders of deportation, exclusion, or removal is the court of appeals.  *See generally* 8 U.S.C. § 1252; *see also Alvarez–Barajas v. Gonzales*, 418 F.3d 1050, 1052 (9th Cir. 2005) (citing REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231, § 106(a)).  However, for claims challenging ancillary or collateral issues arising independently from the removal process—for example, a claim of indefinite detention—federal habeas corpus jurisdiction remains in the district court.  *Nadarajah v. Gonzales*, 443 F.3d 1069, 1076 (9th Cir. 2006), *abrogated on other grounds by Jennings v. Rodriguez*, 138 S. Ct. 830 (2018); *Alvarez v. Sessions*, 338 F. Supp. 3d 1042, 1048–49 (N.D. Cal. 2018) (citations omitted).

## DISCUSSION

Petitioner argues that the summary revocation of his parole without justification or consideration of his individualized circumstances violates the Due Process Clause.  Pet. at17.  The Court agrees.

The Fifth Amendment guarantees that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."  *Zadvydas v. Davis*, 533 U.S. 678, 693 (9th Cir. 2001).  "[I]t is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings."  *Reno v. Flores*, 507 U.S. 292, 306 (1993).  The Due Process Clause generally "requires some kind of a hearing before the State deprives a person of liberty or property."  *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).  "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty."  *Pinchi v. Noem*, No. 25-cv-5632-PCP, 2025 WL 2084921, at *3 (N.D. Cal. July 25, 2025) (citations omitted).  Although the initial decision to detain or release an individual may be within the government's discretion, "the government's decision to release an individual from custody creates 'an implicit promise,' upon which that

1  individual may rely, that their liberty 'will be revoked only if [they] fail[] to live up to the
2  . . . conditions [of release].'" *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)).
3  "Thus, even when ICE has the initial discretion to detain or release a noncitizen pending
4  removal proceedings, after that individual is released from custody [he] has a protected
5  liberty interest in remaining out of custody." *Pinchi*, 2025 WL 2084921, at *3 (citing
6  *Romero v. Kaiser*, No. 22-cv-20508, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022)).

   Respondents contend that because of *Maldonado Bautista*, Petitioner is detained under 8 U.S.C. § 1226(a) and is only entitled to a bond hearing—making his other constitutional claims moot. Ret at 2. The Court disagrees. Upon arrival, Petitioner was determined to not be a danger to the community or a flight risk and was released on humanitarian parole. Pet. at 12. Petitioner has complied with all conditions of his release and has attended all required ICE check-ins and court hearings. *Id.* Petitioner has work authorization, has lived in the community without issue for ten years, is engaged, and has applied for asylum. *Id.* at 2. The relief Petitioner is entitled to is not limited to a bond hearing; Petitioner has a protected liberty interest in remaining out of custody. *See, e.g.*, *Pinchi*, 2025 WL 2084921, at *4 ("[Petitioner's] release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community, and [Petitioner] has a strong interest in remaining at liberty unless she no longer meets those criteria."); *Noori*, 2025 WL 2800149, at *10 ("Petitioner is not an 'arriving' noncitizen but one that has [been] present in our country for over a year. This substantial amount of time indicates he is afforded the Fifth Amendment's guaranteed due process before removal."); *Matute v. Wofford*, No. 25-cv-1206-KES-SKO (HC), 2025 WL 2817795, at *5 (E.D. Cal. Oct. 3, 2025) (finding petitioner had a protected liberty interest in his release).

   As Petitioner has a protected liberty interest, the Due Process Clause requires procedural protections before he can be deprived of that interest. *See Matthews v. Eldridge*, 424 U.S. 319, 335 (1976). To determine which procedures are constitutionally sufficient to satisfy the Due Process Clause, the Court must apply the *Matthews* factors. *See*

*Matthews*, 424 U.S. at 335.  Courts must consider: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.*

The Court finds that all three factors support a finding that the Government's revocation of Petitioner's parole without notification, reasoning, or an opportunity to be heard, denied Petitioner of his due process rights.  First, as discussed above, Petitioner has a significant liberty interest in remaining out of custody pursuant to his conditional parole. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690.  Petitioner has an interest in remaining with his fiancé and continuing the process of seeking asylum.  *See Morrissey*, 408 U.S. 471 at 482 ("Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life.").

Second, the risk of an erroneous deprivation of such interest is high as Petitioner's parole was revoked without providing him a reason for revocation or giving him an opportunity to be heard.  Pet. at 17.  Since DHS's initial determination that Petitioner should be paroled because he posed no danger to the community and was not a flight risk, there is no evidence that these findings have changed.  *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1760 (N.D. Cal. 2017) ("Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."). Petitioner has no criminal record, has not been arrested or otherwise in criminal trouble, has work authorization, and is working towards asylum status.  Pet at 2.  "Once a noncitizen has been released, the law prohibits federal agents from rearresting him merely because he is subject to removal proceedings." *Saravia*, 280 F. Supp. 3d at 1760.  "Rather, the federal

agents must be able to present evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk. . . ." *Id.*

Respondents, failing to address Petitioner's Due Process argument in their response, do not point to any material circumstances that have changed that would warrant reconsideration of his parole. *See generally* Ret. "Where, as here, 'the petitioner has not received any bond or custody hearing,' 'the risk of an erroneous deprivation of liberty is high' because neither the government nor [Petitioner] has had an opportunity to determine whether there is any valid basis for [his] detention." *Pinchi*, 2025 WL 2084921, at *5 (quoting *Singh v. Andrews*, No. 25-cv-801-KES-SKO (HC), 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025)) (cleaned up).

Third, the Government's interest in detaining Petitioner without notice, reasoning, and a hearing is "low." *See Pinchi*, 2025 WL 2084921, at *5; *Matute*, 2025 WL 2817795, at *6; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 22, 2019) ("If the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). Respondents fail to point to any burdens on the Government if it were to have provided proper notice, reasoning, and a pre-deprivation hearing. *See generally* Ret.

Therefore, because Respondents detained Petitioner by revoking his parole in violation of the Due Process Clause, his detention is unlawful. *See, e.g.*, *Alegria Palma v. Larose et al.*, No. 25-cv-1942 BJC (MMP), slip op. at 14 (S.D. Cal. Aug. 11, 2025) (granting a TRO based on a procedural due process challenge to a revocation of parole without a pre-deprivation hearing); *Navarro Sanchez*, 2025 WL 2770629, at *5 (granting a writ of habeas corpus releasing petitioner from custody to the conditions of her preexisting parole on due process grounds).[2]

---

[2] The Court need not address Petitioner's claim arising under the APA because the Petition can be resolved on due process grounds. However, the Court notes that other courts have found violations of the APA based on similar grounds. *See, e.g.*, *Navarro Sanchez*, 2025 WL 2770629, at *4 (finding revocation of petitioner's parole arbitrary and capricious because respondents did not state any reasons for the

**CONCLUSION**

Based on the foregoing, the Court **GRANTS** in part Petitioner's Petition for Writ of Habeas Corpus (ECF No. 1), and **ORDERS** Respondents to immediately release Petitioner from custody subject to the conditions of his preexisting parole. The Court **ORDERS**, prior to any re-detention of Petitioner, that Petitioner is entitled to notice of the reasons for revocation of his parole and a hearing before a neutral decision maker to determine whether detention is warranted. The Government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight.[3] The Parties are **ORDERED** to file a Joint Status Report by December 29, 2025, confirming that Petitioner has been released. The Clerk of Court **SHALL CLOSE** the case.

**IT IS SO ORDERED.**

Dated:  December 23, 2025

Hon. Janis L. Sammartino
United States District Judge

---

revocation); *Noori*, 2025 WL 2800149, at *3 ("Petitioner's parole was revoked without an individualized determination or provided reasoning, which violated the APA."). Similarly, the Court does not need to address Petitioner's Fourth Amendment claim.

[3] This relief has been granted in similar matters. *See, e.g.*, *Matute*, 2025 WL 2817795, at *8; *Pinchi*, 2025 WL 2084921, at *5; *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1097 (E.D. Cal. 2025); *Martinez Hernandez v. Andrews*, No. 25-CV-1035 JLT HBK, 2025 WL 2495767, at *14 (E.D. Cal. Aug. 28, 2025).